UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JON R. DUFFETT,

                         Plaintiff,

     -against-

THE HONORABLE NORMAN Y. MINETA,
SECRETARY OF TRANSPORTATION,
UNITED STATES DEPARTMENT
OF TRANSPORTATION,

                         Defendant.
-----------------------------------------------------------------X

04-CV-2015
(TCP) (AKT)

MEMORANDUM
AND
ORDER

PLATT, District Judge

        Before the Court is a motion by Defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's sole contention on the motion is that Plaintiff has failed to state a prima facie case of disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791(b) and 794(a).[1] For the following reasons, Defendant's motion is DENIED.

---

[1] Defendant asserted in his Memorandum of Law in Support of the Motion for Summary Judgment at pages 10-15 that the Court should grant summary judgment in his favor because Plaintiff had failed to exhaust administrative remedies. Defendant, however, withdrew this claim in his Reply Memorandum at page 1 and conceded that Plaintiff has raised an issue of material fact as to the exhaustion of administrative remedies.

**BACKGROUND**

On or about August 13, 2000, Plaintiff, Jon R. Duffett ("Duffett" or "Plaintiff"), began working for the Federal Aviation Administration ("FAA"), an agency of the United States Department of Transportation ("USDOT"), as an Air Traffic Control Specialist ("ATCS"). (Duffett Aff. ¶¶ 5, 7). Defendant, Norman Y. Mineta ("Defendant"), is the current Secretary of Transportation, for the USDOT. Defendant does not dispute that this Court properly has jurisdiction, as Plaintiff's complaint asserts a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 791(b) (the "RHA"), and a related State law claim for emotional distress.

There are two types of ATCS: (i) Terminal and Center facility ATCS and (ii) Flight Service Station ("FSS") ATCS. (Def.'s 56.1 Stmt. ¶ 4). Both positions require that the ATCS be either medically qualified or qualified with special consideration. (Def.'s 56.1 Stmt. ¶ 9). Terminal and Center facility ATCS control air traffic and are responsible for the safe and efficient movement of aircraft within the facility's airspace, which includes providing aircraft with clearances and instructions to enable aircraft to takeoff, travel and land, and ensuring that standard separation is maintained between aircraft, terrain, and other obstacles. (Def.'s 56.1 Stmt. ¶¶ 6-8). FSS ATCS do not separate aircraft, but rather receive flight plans from pilots and provide pilots with pre-flight briefings

and general assistance while in the air, such as updating weather conditions or identifying locations for lost pilots. (Def.'s 56.1 Stmt. ¶¶ 10-12). According to Plaintiff's Notification of Personnel Action form, Plaintiff was appointed as a Center ATCS. (McCarthy Aff., Ex. 1).

At the end of October of 2001, Plaintiff was diagnosed with a brain tumor. (Duffett Aff. ¶ 7). On November 6, 2001, Plaintiff underwent surgery at New York University Medical Center, and the tumor was removed. (Duffett Aff. ¶ 7). Plaintiff reports that there were no complications during or after the surgery, and he was released from the hospital approximately one week later. (Duffett Aff. ¶ 8). Subsequent to the surgery, Plaintiff underwent testing of some minor muscle twitches. (Duffett Aff. ¶ 9). The final results of this testing indicated that Plaintiff had a normal EEG and showed no markers for epileptic activity, and that the muscle twitches were nothing more than benign and common fasciculations. (Duffett Aff. ¶ 9).

Plaintiff returned to work in February of 2002 and despite the absence of seizures, continued to take standard post-operative seizure medication. (Duffett Aff. ¶ 10). By memorandum dated February 22, 2002, the FAA advised Plaintiff that he was "medically incapacitated from ATCS safety-related duties." (McCarthy Aff., Ex. 3). In March of 2002, Plaintiff discontinued all medications, was doing well, and hoped to return to work as a Center ATCS. (Duffett Aff. ¶

10). In his efforts to return to his former position, Plaintiff underwent several EEGs, all of which were normal, and submitted his medical records as directed on or about March 4, 2002. (Duffett Aff. ¶¶ 11-12). Plaintiff's medical records were then forwarded for a review to Dr. Harriet Lester ("Dr. Lester"), the Regional Flight Surgeon, on or about April 26, 2002, at the request of the New York Center's Medical Officer, Dr. Michael J. Jordan. (Def.'s 56.1 Stmt. ¶ 29).

On October 28, 2002, Plaintiff was permanently disqualified by Dr. Lester for a return to his ATCS position. (Duffett Aff. ¶ 12; McCarthy Aff., Ex. 6). Dr. Lester informed Plaintiff that because he was treated for an oligodendroglioma (brain tumor), he was determined to have a neurological disorder constituting a hazard to safety in the Air Traffic Control System and he did not meet the FAA's applicable medical standard. (McCarthy Aff., Ex. 6). Plaintiff appealed Dr. Lester's decision, and his medical records were then forwarded to the FAA office in Oklahoma City, Oklahoma for a further review and also reviewed by an independent doctor. (Duffett Aff. ¶¶ 13-14; McCarthy Aff., Ex. 7). After nearly ten months and several FAA doctors concurring in the disqualification decision based upon concerns of tumor recurrence or complications, on August 8, 2003, Plaintiff was notified that the FAA had reconsidered and determined that Plaintiff was eligible for special consideration. (Duffett Aff. ¶ 15; McCarthy Aff., Exs. 8, 9, 10). Plaintiff's medical qualification

was changed to a permanent limitation to the FSS option, with the opportunity to submit updated clinical records for reconsideration in 2007 or subsequent years. (Duffett Aff. ¶ 15; McCarthy Aff., Ex. 10).

Thereafter, sometime in August of 2003, Plaintiff sought EEO counseling with Ann Brennan ("Brennan"), an EEO Counselor with the USDOT. (Brennan Aff. ¶ 2). Brennan advised Plaintiff that he may have a claim for discrimination based upon his employer's perception that he has a disability, even though he claimed that he did not have a disability. (Brennan Aff. ¶ 2). Plaintiff informed Brennan that he preferred to delay filing an EEO complaint at that time, as he had an appointment scheduled with a Dr. Cherese M. LaPorta ("Dr. LaPorta"), an independent FAA Certified Flight Surgeon, that he hoped would resolve the situation. (Brennan Aff. ¶ 2).

Plaintiff was examined by Dr. LaPorta, who in a September 15, 2003 letter stated that she could not "find any medical reason to disqualify him," as his medical condition was stable. (Duffett Aff., Ex. B). Plaintiff forwarded Dr. LaPorta's letter, along with five other letters from his treating physicians to the FAA with the hope that his medical clearance status would be changed. (Duffett Aff. ¶¶ 17-19, Exs. B-F). These letters indicated in substance that Plaintiff had no disability related to his surgery, had never had any seizures, had no known neurologic disability, was not taking seizure medication, and showed

5

no evidence of tumor recurrence. (Duffett Aff. ¶¶ 17-19, Exs. B-F). Nonetheless, Plaintiff asserts that he has never been returned to his former duties, and instead serves as a staff support specialist, at a lower rate of pay and with minimal chances of advancement. (Duffett Aff. ¶ 20). Defendant asserts that Plaintiff is still employed as an ATCS but does not dispute that the nature of Plaintiff's employment has changed. (McCarthy Aff. ¶ 41).

On or about December 19, 2003, Plaintiff filed an EEO complaint against Defendant alleging discrimination based on handicap. (McCarthy Aff., Ex. 13). This complaint was dismissed for failure to timely seek EEO counseling. (McCarthy Aff., Ex. 14). Thereafter, on May 14, 2004, Plaintiff timely commenced the instant action.

## DISCUSSION

**I.     Summary Judgment Standard**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. Id. at 255; Castle Rock Entm't, Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary

judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

**II.     Discrimination on account of a Perceived Disability Standard**

Pursuant to Section 501 of the RHA, in a complaint alleging non-affirmative action employment discrimination, the standards used to determine a violation of Section 501 are the standards applied under 42 U.S.C. § 12111, et seq., Title I of the Americans with Disabilities Act ("ADA"). A plaintiff alleging a violation of the ADA must prove that: (i) the defendant is covered by the ADA; (ii) plaintiff suffers from or is perceived as suffering from a disability within the meaning of the ADA; (iii) plaintiff was qualified to perform the essential functions of the job; and (iv) plaintiff suffered an adverse employment action because of his disability or perceived disability. Shannon v. New York City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003); Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). As noted above, Defendant moves for summary judgment only under the second factor, claiming that Plaintiff "cannot show that

he is disabled, or that defendant regards him as disabled, within the meaning of the ADA." (Def.'s Mem. Sum. J. at 17). Accordingly, the Court's inquiry on this motion will be limited to this second factor.

A "disability" is defined as:

(i) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(ii) a record of such an impairment; or

(iii) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The existence of a disability is determined on a "case-by-case" basis. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).

There are a number of sub-definitions included within the definition of a "disability." Impairment is defined, in relevant part, as "any physiological disorder, or condition . . . affecting one or more of the following body systems: neurological . . . ." Major life activities are "activities that are of central importance to daily life." Toyota, 534 U.S. at 197. EEOC regulations include working amongst major life activities. 29 C.F.R. § 1630.2(i); Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 80 (2d Cir. 2000) (recognizing that "working" is a major life activity). Substantially limits is defined as:

> (i) unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j). In determining whether an individual is substantially limited in a major life activity, courts should consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Where the major life activity at issue is working, EEOC regulations further define substantially limits as:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). In determining whether an individual is substantially limited in the major life activity of working, courts should also consider:

> (i) the geographical area to which the individual has reasonable access;
>
> (ii) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

> (iii) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

With respect to a claim of perceived disability, the claim rests on the employer's perception and therefore presents "a question of intent, not whether the employee has a disability." Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (quoting Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997)). Importantly, the employer must perceive the employee as "disabled within the meaning of the ADA." Id. at 646. Thus, in a "regarded as" claim, a plaintiff must prove either that the defendant mistakenly believes plaintiff has an impairment that substantially limits one or more major life activity or that the defendant mistakenly believes that an actual non-limiting impairment substantially limits one or more major life activity. See Sutton v. United Air Lines, 527 U.S. 471, 489 (1999).

### III. The Parties' Arguments and Analysis

Plaintiff's claim lies in his assertion that Defendant has discriminated against him because of Defendant's misconception that Plaintiff is disabled as a result of his diagnosis of a brain tumor. Plaintiff contends that he

10

has presented sufficient evidence to raise a triable issue of fact concerning the perception of disability discrimination. Plaintiff asserts, and Defendant does not dispute, that the major life activity at issue is "working."

Defendant argues that Plaintiff cannot make out a prima facie case of perceived disability discrimination because he cannot establish that Defendant regards him as significantly limited in a major life activity. (Def.'s Mem. Sum. J. at 17). The bulk of Defendant's claim rests on the fact that Plaintiff is still employed as an ATCS, although concededly in a different capacity,[2] and thus he has not been excluded from either a class of jobs or a broad range of jobs in various classes.

Defendant's argument is belied by the numerous references in the exhibits attached to his papers, which confirm that following Plaintiff's return to

---

[2] After receiving a January 10, 2006 letter from Plaintiff's counsel requesting an opportunity to respond to "three serious factual errors" in the argument section of Defendant's Reply Memorandum, Defendant's counsel wrote the Court on January 13, 2006, and again on January 17, 2006. In Defendant's counsel's January 17, 2006 letter, he concedes that Plaintiff is unqualified for the Tower and Center ATCS position because he does not meet medical qualifications, not because he lacks training or is otherwise unqualified; he further concedes that Plaintiff is in fact only performing one of the elements of an ATCS job, namely the duties of an assistant controller position, which includes delivering flight data strips to the ATCS who is controlling the flight.

work, although he retained the title of ATCS, he was barred from performing "safety-related" duties. Where an individual alleges that he is medically disqualified from performing a class of safety-related jobs, this allegation may be sufficient to withstand a motion for summary judgment. See McCormack v. Long Island Rail Rd. Co., 2006 U.S. Dist. LEXIS 7834, at *17-18 (S.D.N.Y. Mar. 1, 2006) (denying motion for summary judgment where plaintiff demonstrated that he had been disqualified from the class of safety-related jobs).

To assess limitations in a class of jobs, courts "begin by identifying [the plaintiff's] pertinent 'training, knowledge, skills or abilities,' and then compare the jobs utilizing those qualifications with the jobs from which [the plaintiff] is excluded and ask whether exclusion from the latter is a significant restriction with respect to the former." McCormack v. Long Island Rail Rd. Co., 2006 U.S. Dist. LEXIS 7834, at * (S.D.N.Y. Mar. 1, 2006) (quoting Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 83 (2d Cir. 2000). Moreover, these types of considerations are relevant in defining the class of jobs used to determine whether the person is disabled. See Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 954-55 (8th Cir. 1999) (citation omitted). Thus, the ADA does not require a showing that absolutely no employment opportunities exist but considers whether the particular disability or perceived disability constitutes for the particular person a significant barrier to employment. Id.

12

Here, the Court has been provided with no information concerning Plaintiff's educational background, training or skills and whether his training or skills are applicable in other positions or are so specialized that Plaintiff may not utilize those skills in any other capacity. Other than the descriptions of the two types of ATCS positions, the Court has been provided with no information concerning other positions, which may have been available to Plaintiff, which would offer pay and opportunities for advancement comparable to the Center ATCS position formerly held by Plaintiff. Furthermore, the Court is unaware if Plaintiff has applied for or was offered any other such position. Notably, Defendant fails to provide the Court with any information to refute Plaintiff's claim that he is now paid at a far lower rate of pay and with little opportunity for advancement. As such, the Court is without a sufficient record to conclude that Plaintiff's exclusion from "safety-related duties" has excluded him from "more than one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, 527 U.S. 471, 491 (1999); see also Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 954-55 (8th Cir. 1999).

The Court analogizes this situation to this Court's past employment with the United States Attorney's Office for the Eastern District of New York to demonstrate the flaw in Defendant's position. It was true during the time when this Court was employed as an Assistant United States Attorney in this

District, and it is true now, that each person so employed, other than the United States Attorney, is given the title of Assistant United States Attorney ("AUSA"). If, however, an AUSA, who because of his employer's perception about a disability that he may or may not have, disqualified the AUSA from handling a full complement of tasks and only assigned him to the complaint room, for example, that AUSA would likely not be on par with his colleagues, either in terms of pay or opportunities for advancement. Thus, Defendant cannot rely upon the fact that Plaintiff is still employed as an ATCS, when it is clear that the duties assigned to Center ATCS and FSS ATCS are very different.

Plaintiff has certainly raised a material issue of fact as to whether defendant's limiting of plaintiff's employment to FSS ATCS duties and excluding him from "ATCS safety-related duties" reflects a belief that plaintiff's treatment for an oligodendroglioma substantially limits him in the major life activity of working. Plaintiff has demonstrated sufficiently for purposes of this motion that Defendant perceives him as suffering from a disability within the meaning of the ADA. Plaintiff has provided ample evidence of Defendant's perception that a recurrent tumor or complication from a recurrent tumor, such as hemorrhage or seizure, would prevent Plaintiff from adequately and safely performing the class of jobs which involve time-critical safety-related duties.

Defendant curiously relies upon Warmsley v. New York City

Transit Authority, 308 F. Supp. 113, 120 (E.D.N.Y. 2004), in support of his argument that Plaintiff has not been precluded from a "class of jobs." In Warmsley, the court struck down the Defendant's reinstatement policy, which required that individuals demonstrate that their disabilities had terminated before they could be reinstated. Id. at 121. The court found that this type of "100% healed" policy precluded the Defendant's claim that it did not perceive the plaintiff therein as "disabled within the meaning of the ADA." Id. Similarly here, Defendant's refusal to reinstate Plaintiff to his Center ATCS position or any comparable position involving "safety-related duties" because of concerns that he is not "100% healed" would appear to defeat Defendant's claim. Thus, Plaintiff has raised a triable material issue of fact in this regard as well.

Given the ADA's, and consequently the RHA's, concern with preventing substantial hardship by way of a significant reduction in an employee's real work opportunities, this Court is simply unable to grant summary judgment to Defendant. The record is too thin, and the Court must, of course, view the facts in the light most favorable to the non-moving party. Accordingly, Defendant's motion for summary judgment is denied on Plaintiff's claim under Section 501 of the RHA.

Lastly, Defendant argues that the Court should grant summary judgment on Plaintiff's allegations asserted under Section 504 of the RHA, 29

U.S.C. § 794(a), because Section 501 provides the exclusive remedy for federal employees alleging disability discrimination in federal employment. See <u>Rivera v. Heyman</u>, 157 F.3d 101, 104-5 (2d Cir. 1998). Defendant's argument is misplaced as Plaintiff only invokes Section 504 to establish this Court's jurisdiction. (Complaint ¶ 3). The allegations of the complaint, however, make clear that Plaintiff grounds his first cause of action in Section 501. (Complaint ¶ 30, stating "That the actions taken by the defendant are in violation of the plaintiff's rights under . . . 29 U.S.C. Section 791."). Accordingly, Defendant's motion is denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED in all respects.

SO ORDERED.

                                                                     s/s Thomas C. Platt
                                                                    Thomas C. Platt, U.S.D.J.

Dated:   Central Islip, New York
            May 12, 2006